IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORAL SEAN McDERBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 08-882-GMS |
| ) | |
| LIEUTENANT MARK DANIELS ) | |
| and SERGEANT BENJAMIN NEFOSKY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

### I.  INTRODUCTION

On November 24, 2008, the plaintiff, Delaware State Police (the "DSP") Corporal Sean

McDerby ("McDerby"), filed this lawsuit against DSP Lieutenant Mark Daniels[1] ("Daniels") and

Sergeant Benjamin Nefosky ("Nefosky").  (D.I. 1.)  In his complaint, McDerby seeks

compensatory and punitive damages, as well as costs of suit, interest, and attorney's fees in

connection with the defendants' alleged violations of 42 U.S.C. § 1983.  (Id. at 9-11.)

Specifically, McDerby alleges that the defendants violated his civil rights and, thus, § 1983 by:

(1) depriving him of his right to a fair trial (Count I); (2) willfully and intentionally engaging in a

conspiracy to deprive him of his fair trial right (Count II); and (3) committing common law

defamation (Count III, filed against Nefosky only).  (Id.)  On March 15, 2010, following

completion of discovery, the defendants filed a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56(c).  (D.I. 45.)  In response, McDerby filed an answering brief

---

[1] McDerby indicates that at all times relevant to this complaint, Lieutenant Daniels was the Superintendant of the
Delaware State Police with the rank of Colonel.  (D.I. 1 at 1.)

opposing the motion (D.I. 50), as well as a separate motion for leave to amend his complaint, on April 12, 2010 (D.I. 62). The defendants oppose McDerby's motion to amend as untimely and prejudicial. (D.I. 66.)

Presently before the court are the defendants' summary judgment motion and McDerby's motion for leave to amend his original complaint. (D.I. 45; D.I. 62.) For the reasons stated below, the court will grant the defendants' motion for summary judgment and deny McDerby's motion to amend his complaint.

## II.    BACKGROUND

The following facts are taken from McDerby's complaint. McDerby became a sworn officer with the DSP on April 1, 1998, and served in that capacity without incident until the beginning of 2006. (D.I. 1 at 2.) Beginning in November of 2005, McDerby began having domestic issues with his fiancé, Seana Sullivan ("Sullivan"), ultimately resulting in a severance of their relationship in early 2006. (Id.) Prior to this severance, Sullivan told McDerby that a male associate "touched her breasts and made improper remarks to her of a sexual nature." (Id.) Upon learning of this incident, McDerby conducted a criminal background check on Sullivan's male friend in the Delaware Judicial Information System (the "DELJIS") and learned that the friend previously had been arrested for a sex crime. (Id.) McDerby warned Sullivan of this information. (Id.) Subsequent to informing Sullivan of her friend's prior sex offense and around the time that their relationship began to deteriorate, Sullivan threatened to contact McDerby's superior to get him "into trouble." (Id.) In response to this threat, McDerby contacted his troop to inform them of Sullivan's accusations and requested an Internal Affairs investigation of these allegations. (Id.) According to McDerby, the DSP attempted to conduct an Internal Affairs

investigation, but was unable to do so because Sullivan did not cooperate with the investigation. (Id.)

Based on his deteriorating relationship with Sullivan and his inability to concentrate, McDerby requested time off from work in April 2006. During his time off, a state police psychologist evaluated him and concluded that he was "unfit for duty" and should take a five week leave of absence. (Id. at 3.) McDerby complied with this recommendation and resumed his duties with the DSP in May 2006. (Id.) He was then suspended in July 2006, when the DSP began investigating him in connection with Sullivan's allegations that he assaulted and stalked her and had illegally picked up her prescription. (Id. at 4.) McDerby was suspended from the DSP during the entirety of the investigation, or approximately fourteen months. The investigation concluded with the assessment that Sullivan's allegations were "unfounded," and McDerby was permitted to return to work. (Id. at 4.)

McDerby was later informed that, although the criminal investigation into Sullivan's accusations would cease, he would be investigated by Nefosky for the DELJIS violations at issue in this case. (Id.) Nefosky's investigation commenced on or about July 28, 2006 and involved: evaluating DELJIS Report #177 (a report generated by the Wilmington Police Department that contained a list of individuals who accessed the names of Sullivan and some of her friends and acquaintances); an interview with DSP Corporal Dalton, whom the plaintiff had called to run a motor vehicle information search on Sullivan; an interview with Sullivan and her roommate, Ms. Marenco ("Marenco")[2]; several interviews with individuals whose names Sullivan provided to Nefosky as people on whom the plaintiff may have improperly run a DELJIS search; and an interview of McDerby with his counsel present. (D.I. 45 at 3-5.) During Nefosky's interview of

[2] Daniels was present during the interviews of Sullivan and Marenco and asked questions during both. (D.I. 50 at 5-6.) It does not appear from the record that Daniels was a participant in any of the other interviews Nefosky conducted in connection with McDerby's case.

3

the plaintiff, on September 26, 2006, McDerby admitted to accessing the motor vehicle history information of Sullivan and Sullivan's friend, Michelle Poppiti, without a law enforcement reason. (Id. at 5.)

On October 25, 2006, Nefosky received the results of a second DELJIS report he initiated to determine whether McDerby had run DELJIS searches on the names provided by Sullivan. (Id.) Nefosky had interviewed a number of the individuals included on Sullivan's list prior to obtaining the second DELJIS report results. (Id. at 4-5.) The October 25th report confirmed that McDerby ran searches on four individuals from Sullivan's list. (Id.)

As a result of Nefosky's investigation, the Delaware Attorney General's Office decided to prosecute McDerby for DELJIS violations. Specifically, the Attorney General's charges alleged that McDerby had used the DELJIS to access information about his fiancé and her friends in violation of DSP protocol dictating that the motor vehicle history and criminal background information contained in the DELJIS can be accessed only for job related investigations. (Id. at 5-6.) On April 19, 2007, McDerby pleaded guilty in the Delaware Superior Court to two misdemeanors, one count of Dissemination of Information, and one count of Misuse of Computer Information.[3] (Id. at 6-7.) The Superior Court sentenced McDerby under the probation before judgment statute to a period of ninety days probation, required him to pay costs, and ordered him to comply with any Family Court orders. (D.I. 45 at 6.)

On May 21, 2007, after the completion of the criminal case, Daniels commenced an Internal Affairs investigation of McDerby's conduct and interviewed McDerby during that investigation. (Id. at 6.) The transcript of McDerby's Internal Affairs statement indicates that he admitted, during his interview with Daniels, to accessing the names of the individuals in the

---

[3] Although McDerby indicates in his complaint that he "pled guilty in order to receive the probation before judgment and to thereby save his career as a Delaware State Trooper," he also admits that he did indeed access the DELJIS system for non-work related reasons. (D.I. 1 at 2; D.I. 45 at 6.)

DELJIS for no authorized law enforcement purpose. (Id.) Upon completion of his Internal Affairs investigation, Daniels presented his findings for case review to Lieutenant Colonel Mark Siefert who concluded there was sufficient evidence to charge McDerby with administrative violations of DSP Rules, including violations of the DSP Responsible Computing Policy. (Id.) On July 30, 2007, following McDerby's hearing before a DSP Trial Board, the Board substantiated a violation of DSP Rule and Regulation #1 for McDerby's dissemination of the criminal history information of Sullivan. (Id.) The Board sanctioned McDerby with a period of suspension and probation. (Id.)

Following McDerby's Trial Board hearing and suspension, McDerby's father, New Castle Police Chief and former DSP Major, Kevin McDerby ("Chief McDerby"), wrote a letter of complaint to Homeland Safety Secretary David Mitchell ("Mitchell"), regarding what he believed to be the improper treatment of his son's case. (D.I. 1 at 8.) DSP Major R.L. Hughes ("Hughes") was assigned to review the case and determined that Nefosky's investigation was "sloppy." (D.I. 1 at 8.) According to McDerby, both Hughes and Mitchell—individuals who were not directly involved in the case—told Chief McDerby that the case against his son should not have been prosecuted. (Id. at 8-9.)

In his complaint, McDerby challenges the manner in which Nefosky and Daniels investigated the alleged DELJIS violations. (D.I. 45 at 4-5.) Specifically, McDerby maintains that Nefosky and Daniels violated his right to a fair trial, and conspired in doing so, by failing to review the DELJIS system to ascertain whether he improperly used it; interviewing individuals that he was alleged to have searched on the DELJIS without first confirming whether he had done so; altering or requesting that the DELJIS Report #177 generated to show his DELJIS searches be altered; communicating with Sullivan via Nefosky's personal, rather than DSP, email

5

address; and breaking DSP protocol by having Daniels involved in the Sullivan and Marenco interviews. (Id. at 5-6.)

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the nonmoving party and all reasonable inferences from the evidence must be drawn in that parties' favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

## IV.   DISCUSSION

As noted above, McDerby contends that Nefosky and Daniels violated § 1983 by depriving him of his constitutional right to a fair trial and conspiring to effect such deprivation.

The court will examine the defendants' motion for summary judgment and McDerby's motion for leave to amend his complaint separately below.

## A. The Section 1983 Fair Trial and Conspiracy Claims

In *Heck v. Humphrey*, the Supreme Court established that to recover damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff alleging § 1983 violations must prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order," declared invalid by an authorized state tribunal, or called into question by issuance of a writ of habeas corpus. [4] *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Conversely, where such a conviction or sentence has not been invalidated, a § 1983 claim is "not

---

[4] McDerby argues that the appropriate standard to apply based on the facts alleged is the *Rooker-Feldman*, rather than the *Heck* "favorable termination," standard. (D.I. 50 at 19-21.) The Supreme Court originally established the *Rooker-Feldman* doctrine in *Rooker v. Fidelity Trust Co.* and *District of Columbia Court of Appeals v. Feldman*, to ensure that "Congress's intent to prevent 'the lower federal courts' from 'sitting in direct review of the decisions of a state tribunal' is given effect." *See Desi's Pizza v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir. 2003) (citations omitted). To this end, the doctrine prohibits federal district courts from "adjudicating actions in which 'the relief requested . . . requires determining that the state court's decision is wrong or . . . voiding the state court's ruling.'" *Id.* (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)). Moreover, the doctrine dictates that lower federal courts do not have jurisdiction "over claims that were actually litigated or 'inextricably intertwined' with adjudication by a state's courts." *Id.* at 418 (citing *Parkview Assocs. Pshp. v. City of Leb.*, 225 F.3d 321, 325 (3d Cir. 2000) (citations omitted)).

McDerby contends that his § 1983 claims are actionable based on the *Rooker-Feldman* doctrine for two reasons. First, McDerby argues that, in view of the *Rooker-Feldman* doctrine generally, and the Third Circuit case, *Desi's Pizza v. City of Wilkes-Barre* specifically, "'a campaign of harassment' against [a plaintiff] therein retained its actionable unconstitutional character even where a state court had adjudicated against the [plaintiff]" and that prosecution was "warranted." *See id.* at 423. Here, McDerby's chief argument supporting the contention that the defendants engaged in a "campaign of harassment" is that the defendants maliciously and selectively prosecuted him. (D.I. 50 at 19-21.) McDerby's complaint, however, does not include claims of malicious and/or selective prosecution. Therefore, the court will not consider this argument.

Second, McDerby asserts that, "[u]nder the *Rooker-Feldman* doctrine as interpreted in *Desi's Pizza*, [his] constitutional claims . . . are not so 'inextricably intertwined' with the state court guilty plea as to preclude further litigation." (D.I. 50 at 18.) This single sentence, however, constitutes the extent of McDerby's argument and is entirely void of any analysis or explanation as to why McDerby's federal claims—derived from the underlying action in which he pleaded guilty—are not "inextricably intertwined" with this state court plea. The court, therefore, will not entertain McDerby's bald assertion. Moreover, even if it chose to address McDerby's assertion, the court is convinced from the record that allowing McDerby's claims to proceed would have the unconstitutional effect of "undo[ing] or prevent[ing] enforcement of the state court's order." *See Desi's Pizza*, 321 F.3d at 422 (citations omitted).

cognizable."[5]  *Id.* at 487.  The Third Circuit further articulated the parameters of the *Heck*

standard in *Gilles v. Davis*, when it concluded that a plaintiff who resolves charges by entering

into an Accelerated Rehabilitation Disposition (ARD) program or a guilty plea is similarly

barred from bringing a subsequent § 1983 suit in connection with the underlying action.  *See*

*Gilles v. Davis*, 427 F.3d 197, 209 n.8.  ("As we discuss, under *Heck*, both a guilty plea and an

ARD are sufficient to bar a subsequent § 1983 claim"); *see also Kossler v. Crisanti*, 564 F.3d

181, 187 (3d Cir. 2009) (holding that a § 1983 malicious prosecution claim "cannot be

predicated on an underlying criminal proceeding which terminated in a manner not indicative of

the innocence" of the plaintiff without subsequent favorable termination).  In support of this

conclusion, the Third Circuit explained that *Heck* requires a plaintiff to show that a "criminal

proceeding terminated in his favor" in order to prevent "creating two conflicting resolutions

arising from the same transaction."  *Id.* at 209 (citing *Heck*, 512 U.S. at 484).

    In reading McDerby's answering brief in opposition to the defendants' motion for

summary judgment and his complaint, it is evident that he does, in fact, seek to demonstrate the

invalidity of his guilty plea.  (D.I. 1; D.I. 50.)  Specifically, McDerby states in his answering

brief that, "[a]s a result of the investigation by [d]efendants, and to ensure his continued

employment with DSP, [p]laintiff was *compelled* to plead guilty to this charge involving

dissemination of confidential information." (D.I. 50 at 2.) (emphasis added).  Again later in this

brief, McDerby, arguing in support of denial of the defendants' summary judgment motion,

---

[5] On June 14, 2010, McDerby filed a motion for a continuation of the trial date and request for further briefing.  (D.I. 79.)  In this motion, McDerby raises an additional argument, based on the Third Circuit's recent holding in *Dique v. New Jersey State Police*, that his federal claims are not barred by *Heck*, because the *Heck* standard no longer includes the requirement that the conviction in question be reversed or otherwise vacated.  (D.I. 79 at 2.)  The *Dique* case, however, is distinguishable from the current action in that the Third Circuit expressly limited its holding to selective enforcement cases.  *See Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir. 2010) ("Henceforth, in a case of *selective enforcement* we will no longer require that the complainant have been convicted and have had that conviction reversed, expunged or invalidated.") (emphasis added).  As explained previously, McDerby's complaint does not include a selective enforcement claim.  Accordingly, the court will not consider this argument.

contends that absent the defendants' "abusive investigatory tactics and motivation" it is "unlikely that the matter ever would have been prosecuted." (Id. at 19.) Far from being an isolated sentiment, McDerby further states that "[t]here can be no doubt that [his] guilty plea was *forced* by his strong desire to continue serving as a Delaware State Trooper and by the malicious and selective tactics employed by both [d]efendants." (Id. at 16.) (emphasis added).

In the same brief, however, McDerby admits that he did indeed access the confidential DELJIS database in order to obtain information on a male friend of Sullivan. (Id. at 2.) Further, McDerby completed a plea agreement form in connection with the DELJIS charges in which he admitted guilt and appeared before a Delaware Superior Court judge to enter a guilty plea to the charges of Unlawful Use of Criminal History Information and Misuse of Computer Information. (D.I. 45 at 9-10.) The Superior Court sentenced McDerby to a ninety day period of probation and ordered him to pay costs and comply with any Family Court orders under the Probation Before Judgment (the "PBJ") statute. (Id. at 10.) McDerby did not challenge or appeal his PBJ sentence, and it has not been otherwise vacated.

Despite pleading guilty at the state court level, McDerby's § 1983 fair trial count in the present action, asserts that he was denied this constitutional right because the defendants: (1) "withheld exculpatory evidence; (2) intentionally concealed true facts; (3) altered and/or destroyed evidence; (4) communicated material misrepresentations; (5) created false information during [their] investigation; (6) forwarded that information onto prosecutors; and (7) charged [him] with a violation of policy that was not in effect at the time of the [his] alleged violations." (D.I. 1 at 9.) McDerby's second count asserting that the defendants engaged in a conspiracy to deny him the right to a fair trial similarly incorporates these specific allegations. (Id. at 10.)

It is clear to the court, based on the substance of the allegations enumerated above and McDerby's statements in his answering brief, that he aims to challenge his underlying conviction for actions to which he has admitted, and which have not been terminated in his favor. *See Baker v. Wittevrongel*, Civ. No. 09-2174, 2010 U.S. App. LEXIS 2027, at *8 (3d Cir. Jan. 29, 2010) (not reported) (dismissing a conspiracy claim against the defendants as barred by the "favorable termination rule announced in *Heck* because the unlawfulness of the defendants' alleged actions imply the invalidity" of the underlying convictions). Consequently, because *Heck* and *Gilles* bar such § 1983 actions, the court will grant the defendants' motion for summary judgment. Moreover, because the complaint fails to state a federal claim, the court declines to exercise supplemental jurisdiction over McDerby's state law defamation claim.[6] *See* 28 U.S.C. § 1367(c); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003). In view of this conclusion, it is not necessary for the court to consider the defendants' alternative arguments for summary judgment in their favor.[7]

## B. The Motion to Amend the Complaint

On April 12, 2010, McDerby filed a motion for leave to file an amended complaint. (D.I. 62.) The motion seeks to add two new counts in connection with the alleged 42 U.S.C. § 1983

---

[6] In determining whether to retain McDerby's state law defamation claim, the court considers the statutory circumstances articulated in 28 U.S.C. § 1367(c), under which a district court may decline to exercise supplemental jurisdiction. Specifically, district courts may decline to exercise supplemental jurisdiction where: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *De Asencio*, 342 F.3d at 309; *see* 28 U.S.C. § 1367(c)(1)-(4). Here, the court declines to exercise supplemental jurisdiction, because it has dismissed the claims over which it has original jurisdiction in this matter.

[7] Alternatively, the defendants assert that: (1) McDerby's alleged fair trial claims are barred as defendant Nefosky did not alter any evidence or withhold *Brady* material, defendant Daniels was not involved in the criminal prosecution, and McDerby has no constitutional fair trial right at an administrative police internal affairs hearing; (2) McDerby's conspiracy claim fails because there is no evidence of violation of his right to a fair trial or of any agreement between Nefosky and Daniels; and (3) Nefosky and Daniels are protected by qualified immunity because "there is no evidence in the record of a constitutional violation and defendants reasonably believed their conduct was lawful." (D.I. 45 at 9-18.)

10

violations: (1) Count IV – failure to provide due process under the United States and Delaware Constitutions; and (2) Count V – failure to provide equal protection under the United States and Delaware Constitutions. (D.I. 62-1 at 11-12.) McDerby asserts that information revealed during discovery lends to the inclusion of these additional claims. (D.I. 62.) Specifically, McDerby notes that discovery revealed that: (1) the defendants acted in bad faith by calling him a "liar" in front of a witness, contacting prospective witnesses before confirming whether he accessed their information on the DELJIS system, failing to provide exculpatory evidence, and "demean[ing] [him] and call[ing] into question his veracity with witnesses and the prosecutor;" (2) Former Secretary of Safety and Homeland Security Mitchell testified that he believed the plaintiff was selectively prosecuted for database access when other potential violators were not questioned; and (3) this selective investigation and prosecution coupled with the defendants' "bad faith" amounts to due process and equal protection violations. (Id. at 1-2.) McDerby does not address the reason(s) for his delay in bringing the motion, or whether granting the motion will result in undue prejudice to the defendants or delay. (D.I. 62.) Moreover, the proposed amended complaint does not include any additional factual allegations. (D.I. 62.)

On April 20, 2010, the defendants filed a response (D.I. 66), opposing the motion. The defendants argue that the motion is untimely and prejudicial to both them and the court for the following reasons. (Id. at 5.) First, the proposed amended complaint, submitted to the court on April 12, 2010, was filed after the date required by the court's Scheduling Order and is premised on information the plaintiff received prior to the close of discovery. (Id.) Second, the proposed amended complaint contains no new factual allegations, is void of case law support, and fails to identify specific amendments in the United States or Delaware Constitutions in support of the additional § 1983 counts. Third, the defendants argue that if the motion to amend is granted,

11

they would need to ask the court to vacate the current Scheduling Order and reissue a new Order to permit additional discovery, new motion deadlines, and set a new trial date. (Id. at 6.) Such actions would delay the litigation and force the defendants to incur additional costs. (Id.) In sum, the defendants contend that the plaintiff has failed to show good cause for amending the complaint at such a late date.

Federal Rule of Civil Procedure 16 provides that a schedule "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." Fed. R. Civ. P. 16(b). In this district, "'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Gonzalez v. Comcast Corp.*, Civ. A. No. 03-455-KAJ, 2004 U.S. Dist. LEXIS 17896, at *2 (D. Del. Aug. 25, 2004) (citation omitted); *see also* 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure §1522.1, at 230-31 (2d ed. 1990) ("The scheduling order and the timetable it establishes will be *binding*. The rule specifically provides that the order can be modified only upon a showing of good cause. This would require the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.") (emphasis added). Here, the court issued a Scheduling Order (D.I. 11) in this case on July 1, 2009. The Scheduling Order does not contemplate amended pleadings, due to the parties representations in the Joint Status Report and during the Scheduling Conference that there was no need to amend the pleadings. (D.I. 10 at 4; D.I. 11 at 1.) McDerby filed his motion on April 12, 2010, almost a month after the deadline for case dispositive motions, after the close of discovery, and only four months prior to trial. Thus, under Rule 16, McDerby is required to show good cause as to why the court should grant his motion.

After having considered McDerby's proposed amendment, the parties' submissions on the issue, and the pertinent law, the court will deny the motion to amend the complaint, because

12

McDerby has not met his burden of showing good cause. The court further concludes that, even under the more generous standard of Federal Rule of Civil Procedure 15(a), it will deny the motion, because granting the motion will result in undue prejudice to the defendants, who anticipate going to trial on this matter on July 19, 2010.

As an initial matter, the court notes that McDerby's motion for leave to amend his complaint does not address the good cause requirement. (D.I. 62.) Rather, McDerby's motion simply notes that the defendants' discovery responses revealed the previously mentioned information regarding due process and equal protection violations. McDerby received this information from the defendants by February 23, 2010. He provides no explanation in his motion for leave to amend, however, as to why he did not file the motion until April 12, 2010. (D.I. 62.) Moreover, McDerby's allegation that the defendants acted in bad faith is derived primarily from the taped Sullivan and Marenco interviews, of which he was aware, or should have been aware, existed at least by December 2009.[8] (D.I. 66 at 3-4.) In addition, even supposing that McDerby did not have adequate time to consider the content of the tapes before the court's Scheduling Order deadlines, those time constraints were self-imposed, as he did not serve the defendants with discovery requests until only thirty-eight days before the close of discovery. (Id.)

Additionally, the court concludes that undue prejudice to the defendants would result if the motion were granted. Pursuant to Rule 15, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may deny a motion to amend when there exists undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also In re*

---

[8] The police report prepared by defendant Nefosky indicates that his interview with Sullivan was tape recorded. (D.I. 66 at 3.) The plaintiff had a copy of this police report and used it as an exhibit at the deposition of Lieutenant Colonel Mark Seifert on December 11, 2009. (Id. at 4.)

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993).

Here, McDerby does not address the issues of undue delay or prejudice in his motion. (D.I. 62.) As previously mentioned, however, this matter is scheduled for a four day jury trial beginning on July 19, 2010. Permitting the plaintiff to add two counts to his complaint at this late date will require vacating the Scheduling Order, result in added discovery, and delay the litigation by requiring the court to allow time for the filing and briefing of a second motion for summary judgment. Moreover, the court is skeptical of McDerby's assertion that he could not file the motion to amend sooner, in view of his awareness of the taped interviews and delay in serving discovery on the defendants. Given these considerations and the court's inability to ameliorate the prejudice the defendants will suffer if it permits the belated insertion of two additional counts, the court will deny McDerby's motion for leave to amend his complaint.

## V.   CONCLUSION

For the foregoing reasons the court will grant the defendants' motion for summary judgment and deny the plaintiff's motion for leave to amend his complaint. As previoulsy noted, the court will likewise decline to exercise supplemental jurisdiction over the plaintiff's state law claim.

Dated: June 16, 2010

CHIEF, UNITED STATES DISTRICT COURT

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORPORAL SEAN McDERBY, )
)
          Plaintiff, )
)
     v. )
) C.A. No. 08-882-GMS
)
LIEUTENANT MARK DANIELS )
and SERGEANT BENJAMIN NEFOSKY, )
)
          Defendants. )
_____ )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.     The defendants' motion for summary judgment (D.I. 44) is GRANTED.

2.     McDerby's motion for leave to amend his complaint (D.I. 62) is DENIED.

3.     McDerby's motion for continuation of trial date and request for further briefing

       (D.I. 79) is DENIED as moot.

4.     The Clerk of Court is directed to close this case.

Dated: June 16, 2010

CHIEF, UNITED STATES DISTRICT COURT